**LOWE & ASSOCIATES, P.C.**
Steven T. Lowe, Esq. (SBN 122208)
steven@lowelaw.com
Aleksandra M. Hilvert (SBN 258463)
aleksandra@lowelaw.com
8383 Wilshire Blvd., Ste. 1038
Beverly Hills, CA 90211
Telephone: (310) 477-5811
Facsimile: (310) 477-7672

*Attorneys for Plaintiffs*
*Thomas Welter & Rob Stuart*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **THOMAS WELTER,** an individual; and **ROB STUART,** an individual<br><br>Plaintiffs<br>v.<br><br>**MICHAEL HURT,** an individual; **CARAVAN HOLDINGS CORPORATION D/B/A OASIS CANNABIS COMPANY,** a Nevada corporation; **CARAVAN HOLDINGS LLC,** a Wyoming limited liability company; and **DOES 1 to 50,** inclusive,<br><br>Defendants. | Case No.: 2:23-CV-02627-SPG-MAR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST MICHAEL HURT, CARAVAN HOLDINGS CORPORATION d/b/a OASIS CANNABIS COMPANY, AND CARAVAN HOLDINGS, LLC**<br><br>**[Filed Concurrently with the Declarations of Thomas Welter, Rob Stuart and Steven T. Lowe, Esq.]**<br><br>**Date:** October 1, 2025<br>**Time:** 1:30 p.m.<br>**Ctrm:** 5-C<br>**Judge:** Sherilyn Peace Garnett |

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

PLEASE TAKE NOTICE that on October 1, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5-C of the First Street Courthouse, located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiffs Thomas Welter and Rob Stuart will, and hereby do, move this Court for entry of default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure against Defendants Michael Hurt, Caravan Holdings Corporation d/b/a Oasis Cannabis Company, and Caravan Holdings LLC.

This Motion is based on the following grounds:

1. This case was originally filed against Defendants Michael Hurt ("Hurt") and Caravan Holdings Corporation d/b/a Oasis Cannabis Company ("Caravan") on January 29, 2023, in the Los Angeles Superior Court. Those Defendants removed the case to this Court on June 2, 2023. Thereafter, the original Defendants defended this case for two years, ultimately resulting in a recommendation of Terminating Sanctions by the Magistrate on April 1, 2025 (**Dkt. 129**); however, first Defendants were permitted to file a 12(b)(6) motion (**Dkt. 122**), which was denied on May 27, 2025 (**Dkt. 136**).

2. Defendants were properly served with the First Amended Complaint on December 30, 2024, and default was entered against the entity defendants on February 28, 2025 (**Dkt. 116**), and Defendant Hurt on July 1, 2025 (**Dkt. 156**), after they failed to respond within the time required by law, and after Plaintiffs had filed most all their trial documents (**Dkts. 138, 139, 140, 141, 144, 145, 146, 147, 148, 149, 150, 151, 152, and 153**);

3. Plaintiffs have pleaded sufficient facts supporting their fraud-based claims including common law fraud, securities fraud, conversion, and receipt of stolen property, all of which are deemed admitted by virtue of the default;

4. The *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) factors weigh in favor of entering default judgment;

5. Plaintiffs have suffered actual damages totaling $1,308,724.52;

6.   Plaintiffs are entitled to treble damages under *California Penal Code* § 4
     96(c), totaling $3,926,173.56, which includes the actual damages described
     hereinabove;

7.   Plaintiffs seek $500,000 in emotional distress damages based on detailed
     testimony describing the prolonged personal and professional impact of
     Defendants' fraudulent conduct;

8.   Plaintiffs seek $290,455.75 in attorneys' fees and litigation costs, supported
     by detailed billing records;

9.   All damages should be jointly and severally imposed based on alter ego and
     co-conspirator liability;

10.  Plaintiffs seek total damages of $4,716,629.31, including actual, treble,
     emotional distress, and attorneys' fees and costs.

   This Motion is based on the accompanying Memorandum of Points and
Authorities, the Declarations of Rob Stuart, Thomas Welter, and Steven T. Lowe, Esq.,
all pleadings and papers filed in this action, and upon such further oral or documentary
evidence as may be presented in this matter.

Dated: September 2, 2025                          **LOWE & ASSOCIATES, P.C.**

                                        By:  _____
                                             Steven T. Lowe, Esq.
                                             Attorney for Plaintiffs Thomas Welter
                                             and Rob Stuart

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

1

## <u>TABLE OF CONTENTS</u>

2    I.    INTRODUCTION ...................................................................................................1

3    II.    BACKGROUND ...................................................................................................3

4    III.    LEGAL STANDARD ...........................................................................................5

5    IV.    ARGUMENT ........................................................................................................6

6        A.  The Court Should Enter A Default Judgment As Requested ............................6

7            1.  Default Was Properly Entered ................................................................6

8            2.  Plaintiffs Have Stated Well-Pleaded Claims for Fraud .......................7

9                a.  Fraud ............................................................................................7

10                b.  Securities Fraud ..........................................................................9

11                c.  Conversion ................................................................................10

12                d.  Receiving Stolen Property ........................................................11

13            3.  The *Eitel* Factors Support Entry of Default Judgment...................12

14        B.  The Court should award Plaintiffs $4,716,629.31 .........................................14

15            1.  Actual Damages ....................................................................................15

16                a.  Principal .....................................................................................15

17                b.  Interest .......................................................................................15

18            2.  Treble Damages Under California Penal Code § 496(c) ..................18

19            3.  Emotional Distress ..............................................................................19

20            4.  Attorneys' Fees and Costs ...................................................................21

21            5.  Joint and Several Liability Based on Alter Ego Doctrine.................22

22    V.    CONCLUSION....................................................................................................24

23

24

25

26

27

28

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages(s)**

*Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980). ...............................................................5

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825 (1962). ....................23

*Bell v. Feibush,* 212 Cal. App. 4th 1041 (2013). ...........................................................11, 18

Bisno v. Kahn, 225 Cal. App. 4th 1087 (2014). .................................................................16

*Benny v. Pipes*, 799 F.2d 489 (9th Cir. 1986)..................................................................13

*DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024). .......................................8

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ......................................................5, 6, 12

*Exxon Valdez v. Exxon Mobile Corp. (In re Exxon Valdez)*, 490 F.3d 1066 (9th Cir. 2007). .........20

*Ghirardo v. Antonioli*, 8 Cal. 4th 791 (1994). .............................................................15, 17

*Kasdan, Simonds, McIntyre, Epstein & Martin v. World Sav. & Loan Ass'n (In re Emery)*, 317 F.3d 1064 (9th Cir. 2003).............................................................................................................10

*Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916 (C.D. Cal. 2010)........................2, 14

*Martin v. Ajax Constr. Co.*, 124 Cal. App. 2d 425 (1954) ..................................................17

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598 (9th Cir. 2014). ..............……9

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) ...................................14

*Reves v. Ernst & Young*, 507 U.S. 170 (1993);...................................................................9

*Santisas v. Goodin*, 17 Cal. 4th 599 (1998). .....................................................................21

*Simple Design Ltd. v. Enerjoy Ltd.*, 710 F. Supp. 3d 817 (C.D. Cal. 2024)....................................6

*S&G Labs Haw., Ltd. Liab. Co. v. Graves*, 712 F. Supp. 3d 1364 (D. Haw. 2024)......................20

*Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523 (2000) ............................................23

*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412 (1981).......................19

*Stock v. Meek*, 35 Cal. 2d 809 (1950)………………………………………… 17

*Verdugo-Gonzalez v. Holder*, 581 F.3d 1059 (9th Cir. 2009). .......................................11

*Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152 (9th Cir. 2018)…………………….....22

*Wood v. Elling Corp.*, 20 Cal. 3d 353 (1977). ...................................................................23

**Statutes**                                                                                                  **Pages(s)**

California Constitution, Art. XV, §§ 1(1)–(4) )...…………………………………………..…15, 16

California Corporations Code § 25118(b)(1) )...……………………………….…...……...…16

California Penal Code §§ 484, 496(a), 496(c) …………………………………..1, 6, 11, 12, 13, 18, 21, 24

Federal Rules of Civil Procedure 8(a)(3), 54(c), 55(b), ……………………………………1,  5, 14

SEC Rule 10b-5………………………………………………………………………..9

C.D. Cal. Local Rule 55-3……………………………….…………………………………...…22

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Thomas Welter and Rob Stuart ("Plaintiffs") respectfully move the Court
for entry of default judgment against Defendants Michael Hurt ("Hurt"), Caravan
Holdings Corporation d/b/a Oasis Cannabis Company, and Caravan Holdings LLC
(collectively, "Defendants"), jointly and severally, pursuant to Rule 55(b) of the *Federal
Rules of Civil Procedure*.

This case arises from Defendants' fraudulent inducement of Plaintiffs to invest $1
million in what was represented to be a legitimate commercial cannabis venture. In
reality, the investment was a sham orchestrated by Hurt and Caravan Holdings LLC, who
misappropriated the funds and failed to disclose material facts regarding the corporate
entities' structure, licensing status, and financial viability. Hurt also circulated materials
to potential lenders including the Plaintiffs, containing material, false representations of
fact. After multiple procedural delays and missed deadlines—including the failure to
answer the First Amended Complaint after the Court denied Hurt's motion to dismiss—
default was properly entered against all three Defendants.

The operative claims include breach of contract, common law fraud, securities
fraud, conversion, and receiving stolen property under *Penal Code* § 496(c). However,
for the purpose of this motion, Plaintiffs seek entry of default judgment based solely on
the fraud-based causes of action: fraud, securities fraud, conversion, and receiving stolen
property. This judgment should be jointly and severally imposed against all three
Defendants and should include damages totaling $4,716,629.31, comprising actual losses,
prejudgment interest, attorney's fees, and emotional distress.

## II.    BACKGROUND

Plaintiffs Thomas E. Welter and Robert Stuart, both New Mexico residents,
collectively loaned $1,000,000 to Defendant Caravan Holdings Corporation ("Caravan")
between August 2020 and March 2022. *See* First Amended Complaint (**Dkt. 100**) at ¶¶

15-36.[1] Each loan was governed by a Convertible Promissory Note providing for a 14% annual interest rate, monthly interest payments, and acceleration and attorneys' fees in the event of default. *Id.*

After reviewing and relying on a "pitch deck" presented by Defendant Michael Hurt on or around September 27, 2019, Mr. Welter loaned Caravan $500,000 across four tranches: $100,000 in August 2020, $100,000 on March 4, 2021, $200,000 on November 18, 2021, and $100,000 on March 8, 2022. *Id.* at ¶ 15-20; **Welter Decl.** at ¶ 4.[2] Mr. Stuart—who was introduced to the "opportunity" by Mr. Welter and persuaded by a pitch deck presented on December 3, 2021—loaned $300,000 on December 15, 2021, followed by an additional $200,000 on February 21, 2022. **Dkt. 100** at ¶¶ 24-27; **Stuart Decl.** at ¶ 2. *See* **Stuart Decl.** Exs. A & B, **Welter Decl.** Exs. A-D.

Each Promissory Note was materially identical and entitled Plaintiffs to monthly interest payments of $5,833.33. **Dkt. 100** at ¶ 36. Hurt made timely payments at first, but Caravan's repayment obligations began to falter shortly after Plaintiffs' final disbursements in early 2022. *Id.* at ¶ 36-37; **Welter Decl.** at ¶ 7; **Stuart Decl.** at ¶ 5. In March 2022, Mr. Stuart received a timely interest payment on his December 2021 Promissory Note but received no payment on his February 2022 note. *Id.* Mr. Welter received a full interest payment that month. *Id.* Neither Plaintiff received any interest payments in April or May 2022, resulting in $17,500 in accrued interest owed to each Plaintiff by June 2022. **Dkt. 100** at ¶ 38; **Welter Decl.** at ¶ 7; **Stuart Decl.** at ¶ 5. On or around June 14, 2022, Hurt issued partial and untimely payments—$14,001 to Mr. Welter and $11,666 to Mr. Stuart—leaving shortfalls of $3,499 and $5,833, respectively. **Dkt. 100** at ¶ 39; **Welter Decl.** at ¶ 7; **Stuart Decl.** at ¶ 5. These were the last payments

---

[1] Upon entry of default, the factual allegations in the complaint—except those relating to damages—are deemed admitted. *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).

[2] As discussed hereinbelow, the pitch deck contained multiple material misrepresentations of fact. *See infra.*§ 4(a)(2). Also, the pitch decks provided to potential lenders remained essentially the same between 2019 and 2022. *Id.* at ¶ 25 **(Michael Hurt, October 10, 2024, at 139:18-25; 140:1-8)**.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

ever made by Hurt. **Dkt. 100** at ¶ 40; **Welter Decl.** at ¶ 7; **Stuart Decl.** at ¶ 5.[3]

After months of missed payments, Plaintiffs' counsel issued a notice of claims on October 17, 2022, demanding payment and providing a reasonable opportunity to cure. **Dkt. 100** at ¶ 44; **Welter Decl.** at ¶ 8; **Stuart Decl.** at ¶ 6. Hurt responded on October 27, 2022, promising to remit all amounts owed within two weeks. **Dkt. 100** at ¶ 45; **Welter Decl.** at ¶ 8; **Stuart Decl.** at ¶ 6. No payments were made. *Id.* at ¶ 46; **Welter Decl.** at ¶ 8; **Stuart Decl.** at ¶ 6. On November 14, 2022, Plaintiffs issued a formal notice of acceleration, declaring the full balance of principal and interest immediately due and payable. **Dkt. 100** at ¶ 47; **Welter Decl.** at ¶ 8; **Stuart Decl.** at ¶ 6. Defendants did not respond nor make any payments since. **Dkt. 100** at ¶ 48; **Welter Decl.** at ¶ 8; **Stuart Decl.** at ¶ 6.

As of the original filing, Defendants owed:

- $1,000,000 in principal ($500,000 to Mr. Welter and $500,000 to Mr. Stuart);

- $36,164 in accrued unpaid interest to Mr. Welter;

- $40,831 in accrued unpaid interest to Mr. Stuart. *Id.* at ¶ 43.

These amounts continue to grow, and no payments have been made since June 2022. **Dkt. 100** at ¶ 40; **Welter Decl.** at ¶ 7; **Stuart Decl.** at ¶ 6.

On October 10, 2024, during his deposition, Hurt attempted to justify Caravan's default by testifying under oath that the company collapsed due to a broader downturn in the cannabis industry in late 2022. *Id.* at ¶ 41 **(Michael Hurt, October 10, 2024, at 51:24-25; 52:1-3)**. However, Caravan's payment failures began in March 2022—months before the alleged industry downturn—undermining that claim. *Id.* at ¶ 37.

---

[3] On or around August 22, 2022, Mr. Welter entered into a Convertible Note Conversion Agreement with Caravan, under which 50% of one $100,000 Promissory Note was to be converted into equity, and Caravan agreed to pay the remaining $50,000 in cash upon receipt of the signed agreement. *Id.* at ¶¶ 21-22; **Welter Decl.** at ¶ 6. However, Caravan failed to either pay the $50,000 in cash or to provide any document reflecting any equity. **Dkt. 100** at ¶ 42. As a result, this "conversion" is for all intents and purposes null and void and without force or effect.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Hurt also testified that he sold his 91.25% ownership stake in Caravan. *See* Report and Recommendation of United States Magistrate Judge (**Dkt. 129**) at 10. However, he has not provided any details regarding the alleged sale—such as who purchased the shares, when the sale occurred, or the price—raising serious doubts about the legitimacy of that claim. *Id.*

In addition to defaulting on their financial obligations, Defendants engaged in a deliberate pattern of misrepresentation and concealment regarding a 36.4-acre cannabis farm located at 321 and 303 San Andreas Road in Santa Cruz County (the "Santa Cruz property"), which Caravan prominently featured in investor pitch materials shown to Plaintiffs and used as a key inducement for their investments. **Dkt. 100** at ¶¶ 49, 62. The September 2022 pitch deck, substantially identical to the materials shown to Plaintiffs, claimed that Caravan had (1) purchased and financed development of the Santa Cruz property, (2) secured $10 million in project funding, (3) obtained county approvals and licenses, and (4) budgeted $9 million for facility expansion. *Id.* at ¶¶ 25, 49. Hurt later admitted under oath that none of these claims were true. *Id.* at ¶ 50,

Hurt further testified that Caravan never owned the property and had "made the deal," but it "fell apart." *Id.* at ¶ 51 (**Michael Hurt, October 10, 2024, at 51:3; 50:9-11**). He could not recall basic facts such as the seller's name, purchase price, or the location of the signed agreement—despite admitting he had executed one. *Id.* at ¶ 52 (**Michael Hurt, October 10, 2024, at 51:1-25; 52:1-20**). He also could not produce any documentation for the claimed licenses or approvals. *Id.* at ¶¶ 53-54 (**Michael Hurt, October 10, 2024, at 91:11-24**). His testimony contradicted itself at various points, asserting both that Caravan had acquired the property ("[H]ad Caravan purchased a 36-acre complex in Santa Cruz County?" "We had.") and that the deal never closed ("[H]ad Caravan purchased a 36-acre complex in Santa Cruz County, yes or no?" "No.") *Id.* at ¶ 55 (**Michael Hurt, October 10, 2024, at 50:7-11; 50:13-16**).

Undermining these denials, Caravan wired $250,000 on April 4, 2022, to 321 San Andreas LLC. *Id.* at ¶ 60. Although Hurt disclaimed any affiliation, public filings from

July 2024 identify him as the agent for service of process for 321 San Andreas LLC and list the property as his address. *Id.* at ¶¶ 61-62.

Further investigation revealed that the Santa Cruz property was purchased on February 3, 2023, for $9 million by Caravan Holdings LLC, 650 Howard 2017 LLC, and Junco Partner Holdings LLC, as tenants in common. *Id.* at ¶ 63. The Grant Deed identifies Caravan as a co-owner as of February 2023—directly contradicting Hurt's sworn testimony. *Id.* at ¶ 65 (**Michael Hurt, October 10, 2024, at 50:13-16**). Individuals associated with the two co-purchasing entities, Thomas Bechard and David Siemenski, were also named as Caravan business development personnel in the pitch deck. *Id.* at ¶ 64.

Plaintiffs allege on information and belief that lender funds—including their own—were used, directly or indirectly, to fund the $9 million acquisition, in violation of Caravan's representations and without lender knowledge or consent. *Id.* at ¶ 65. Moreover, by purchasing this property through Caravan Holdings, LLC, Hurt diverted this property from the LLC's alter egos, namely Hurt and Caravan Holdings Corporation. *Id.* at ¶¶ 10-13, 63, 65.

## III.    LEGAL STANDARD

When a plaintiff's claim is not for a sum certain, the plaintiff must apply to the Court for a default judgment. *Fed. R. Civ. P.* 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Simple Design Ltd. v. Enerjoy Ltd.*, 710 F. Supp. 3d 817, 822 (C.D. Cal. 2024) (brackets in original) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.

1986)).

## IV.    ARGUMENT

### A.    The Court Should Enter A Default Judgment As Requested

#### 1.    Default Was Properly Entered

This is not the typical case of default. Defendants defended this case for **two and a half years** before default was entered on the FAC. Plaintiffs first filed this action against Defendants Hurt and Caravan Holdings Corporation, in the Superior Court of the State of California for the County of Los Angeles on January 29, 2023, alleging breach of contract, breach of fiduciary duty, and sale of an unregistered security. On June 2, 2023, defendants removed the case to the United States District Court for the Central District of California.

On June 7, 2023, Plaintiffs filed a request for the Clerk to enter default against Hurt and Caravan Holdings Corporation (**Dkt. 21**), and on June 8, 2023, the Clerk entered default against both defendants (**Dkt. 22**). On August 4, 2023, Defendant Hurt moved to set aside the default as to himself and Caravan, which the Court granted in part and denied in part—setting aside the default as to Hurt but denying the request as to Caravan (**Dkt. 29**). Plaintiffs renewed their request for entry of default against Hurt on September 5, 2023 (**Dkt. 31**), which the Court granted on September 6, 2023 (**Dkt. 32**). However, the Court subsequently set aside the default on September 19, 2023 (**Dkt. 41**).

On December 16, 2024, the Court granted Plaintiffs leave to amend their complaint (**Dkt. 99**), and Plaintiffs filed the First Amended Complaint ("FAC") on December 23, 2024, naming Hurt, Caravan Holdings Corporation, and Caravan Holdings LLC as defendants (**Dkt. 100**). The amended complaint asserted claims for breach of contract, breach of fiduciary duty, securities fraud, common law fraud, conversion, and receiving stolen property under *Penal Code* § 496(c). On December 30, 2024, a 21-day summons issued (**Dkt. 104**). Thereafter, all Defendants were served with the FAC.

On February 21, 2025, Plaintiffs requested entry of default against Hurt, Caravan Holdings Corporation, and Caravan Holdings LLC (**Dkts. 110–111**), and on February 28,

6

2025, the Clerk entered default against all three defendants (**Dkt. 116**).

However, on March 19, 2025, the parties filed a joint stipulation to set aside default as to Hurt only (**Dkt. 120**), which the Court granted on March 20, 2025 (**Dkt. 121**). That same day, Hurt filed a Motion to Dismiss the FAC (**Dkt. 122**).

The Court denied Hurt's Motion to Dismiss on May 27, 2025 (**Dkt. 136**), triggering a renewed 21-day deadline to answer the FAC by June 17, 2025. In a May 29, 2025 email, later attached as Exhibit A to a declaration by Steven T. Lowe (**Dkt. 154**), Hurt acknowledged this deadline, stating, "Given I have 21 days to respond to your FAQ [sic] I would request we push the trial date." Despite this admission, Hurt failed to file an answer, participate in the required joint pretrial filings per the Court's Standing Order (**Dkt. 10**), or otherwise communicate with Plaintiffs' counsel.[4]

On June 4, 2025, Plaintiffs filed their Memoranda of Contentions of Fact and Law, voluntarily dismissing without prejudice one of their breach of contract claims and their claim for breach of fiduciary duty (**Dkt. 141**). On June 23, 2025, Plaintiffs again moved for entry of default against Hurt (**Dkt. 154**), and the Clerk entered default against him on July 1, 2025 (**Dkt. 156**). In sum, default was properly entered and, for the reasons that follow, judgment against all three Defendants is warranted.

### 2.    Plaintiffs Have Stated Well-Pleaded Claims for Fraud

Plaintiffs seek default judgment based on their fraud-based causes of action: (a) fraud, (b) securities fraud, (c) conversion, and (d) receiving stolen property. Each of these claims is well-pleaded in the FAC and independently supports the entry of default judgment.

### a.    Fraud

---

[4] Magistrate Judge Margo A. Rocconi has issued several significant orders in this case: on October 25, 2024, she granted in part and denied in part Plaintiffs' motion to compel discovery (**Dkt. 89**); and on February 27, 2025, she issued an order to show cause why terminating sanctions should not be imposed against Defendant Hurt (**Dkt. 115**). On April 1, 2025, the Magistrate Judge issued a Report and Recommendation recommending that terminating sanctions be entered against Defendant Hurt (**Dkt. 129**).

"A claim for fraud requires: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024).

Plaintiffs allege that Defendants Michael Hurt, Caravan Holdings Corporation, and Caravan Holdings LLC engaged in a deliberate scheme to induce $1,000,000 in loans by misrepresenting Caravan's financial condition, operations, and intended use of funds. In or around September 2021, Hurt provided Plaintiffs with a pitch deck falsely claiming that Caravan had acquired and developed a 36.4-acre cannabis cultivation facility in Santa Cruz County, secured $10 million in funding, and obtained necessary licensure. **Dkt. 100** at ¶ 49. In reality, Caravan owned no such property, had not raised those funds, and had no such licenses. *Id.* at ¶ 50.

Public records and Hurt's deposition confirm that the Santa Cruz property— located at 321 and 303 San Andreas Road—was not acquired until February 3, 2023 by Caravan Holdings LLC and two related entities (650 Howard 2017 LLC and Junco Partner Holdings LLC), presumably using lender funds. *Id.* at ¶¶ 49, 63. These entities were listed as tenants in common and included individuals—such as Thomas Bechard and David Siemenski—who were identified in the pitch deck as Caravan personnel, further evidencing concealment and overlap. *Id.* at ¶ 64. Although Hurt denied knowing of 321 San Andreas LLC during his deposition and could not explain wire transfers to that entity in an amount of $250,000, a July 2024 Statement of Information filed with the California Secretary of State lists Hurt as the agent for service of process for 321 San Andreas LLC, with his address identified as 321 San Andreas Road. *Id.* at ¶¶ 61-62 (**Michael Hurt, October 10, 2024, at 133:12-25; 134:1-17**). Similarly, a Wyoming LLC annual report for Caravan Holdings, LLC is signed by Hurt. **Dkt. 100** at ¶ 14.

Defendants further concealed the extent of Caravan's financial distress. While Hurt claimed at his deposition that Caravan Holdings Corporation was the victim of a downturn in the market that occurred in late 2022, Defendants had already stopped

making interest payments in March 2022. *Id.* at ¶¶ 36-37, 45. In an October 27, 2022 email, Hurt promised full repayment within two weeks—despite knowing that Caravan lacked the funds to follow through. *Id.* at ¶ 45. Plaintiffs reasonably relied on these misrepresentations in providing the loans, resulting in over $1 million in losses. This was not a performance dispute—Defendants used the loan agreements themselves as instruments of fraud.

### b.    Securities Fraud

"For a private plaintiff or the SEC to prove a violation of Rule 10b-5, they must prove the following elements: (a) The individual misrepresented a material fact... (b) The individual did so knowingly, i.e. scienter ... (c) The plaintiff relied on the individual's material misrepresentation. That is, the misrepresentation must have caused the individual to transact in the security. (d) The plaintiff suffered loss." *SEC Rule* 10b-5. "The Plaintiffs must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014); *see also*, *People v. Shock,* 152 Cal. App. 3d 379, 388 (1984) (the public sale of fractional interests in secured promissory notes constituted securities despite not satisfying the risk-capital test because it "fit squarely within the federal test: specifically, that ordinary individual investors - many committing relatively modest sums - relied upon the skill, services and solvency of [the enterprise] to protect their investment").

Plaintiffs invested a total of $1,000,000 in Defendants' enterprise through Convertible Promissory Notes, which qualify as securities under both federal and California law. *Id.* at ¶¶ 15-36. *See Reves v. Ernst & Young*, 507 U.S. 170, 176 (1993); *see also Shock*, 152 Cal. App. 3d at 388. In connection with the offer and sale of these securities, Defendants made numerous material misrepresentations and omissions designed to induce Plaintiffs' loans. Specifically, the September 2022 pitch deck falsely stated that Caravan had acquired and developed a 36.4-acre cannabis cultivation facility

9

1   in Santa Cruz County, secured $10 million in funding, and obtained all necessary

2   licenses. *Id.* at ¶¶ 25, 49. In reality, Caravan Holdings Corporation never owned the

3   property, no funding had been secured, and the company lacked the required licenses. *Id.*

4   at ¶ 50.

5       These misstatements were deliberate and calculated to induce Plaintiffs' loans. At

6   the time the pitch deck was circulated—from 2019 through late 2022—the Santa Cruz

7   property had not been acquired, nor had Caravan obtained funding or licensure as

8   claimed. *Id.* In truth, the property was not purchased until February 2023 and not by

9   Caravan Holdings Corporation, but by Caravan Holdings LLC and two affiliated entities

10  (owned by people identified in the Caravan pitch deck)—none of which were disclosed to

11  Plaintiffs. *Id.* at ¶¶ 49, 63. Defendants continued soliciting funds even as Caravan was

12  missing interest payments and nearing financial collapse, while Hurt issued repeated

13  reassurances of imminent repayment despite knowing that no such funds were available.

14  *Id.* at ¶¶ 36-37, 45.

15              **c.    Conversion**

16      "The elements of conversion are (1) the plaintiff's ownership or right to possession

17  of the property; (2) the defendant's conversion by wrongful act inconsistent with the

18  property rights of the plaintiff; and (3) damages... In California, conversion is a strict

19  liability tort: Questions of good faith, lack of knowledge, and motive are ordinarily

20  immaterial." *Kasdan, Simonds, McIntyre, Epstein & Martin v. World Sav. & Loan Ass'n*

21  *(In re Emery)*, 317 F.3d 1064, 1069 (9th Cir. 2003).

22      Plaintiffs loaned $1,000,000 to Defendants between 2020 and early 2022 for use in

23  a commercial cannabis venture known as Caravan Holdings Corporation d/b/a Oasis

24  Cannabis Company. *Id.* at ¶¶ 15-36. Lender funds were converted, but by Caravan

25  Holdings LLC and two affiliated entities—none of which had been disclosed to Plaintiffs.

26  *Id.* at ¶ 63. Defendants used lender funds, including Plaintiffs' loans, to complete the

27  purchase of the Santa Cruz Property, outside of Caravan Holdings Corporation, all the

28  while concealing the true ownership structure of the entities that had purchased the

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

property.

This diversion of funds was unauthorized and directly contrary to the purpose for which the money was provided. Public records confirm that Caravan Holdings Corporation never held title to the property, and that Caravan Holdings LLC and affiliated insiders became the actual owners. *Id.* at ¶¶ 51-55.

### d.    Receiving Stolen Property

*Cal. Penal Code* § 496(c) provides for civil plaintiffs to recover civil remedies for a violation of subdivision (a) which is quite broad, encompassing "every person who buys or receives any property ... that has been obtained in any manner constituting theft." *Cal. Penal Code* § 484 explains that every person who "knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money" is guilty of theft. *Cal. Penal Code* § 484; *see also, Bell v. Feibush*, 212 Cal. App. 4th 1041 (2013). This case stands for the proposition that a violation of *Cal. Penal Code* § 496(a) can occur when a borrower of money refuses to repay their loan when the lender asks for their money back thus resulting in the borrower "withholding" stolen funds. *Id.* In this case, Plaintiffs, through their attorneys, accelerated the loan and demanded repayment on November 14, 2022. **Dkt. 100** at ¶ 47. In light of the fact that the funds were procured in the first place by fraud, Defendants have in fact withheld stolen funds.

"In California, the crime of 'receipt of stolen property' basically consists of three elements: (a) the property was stolen, and (b) the defendant was in possession of it, (c) knowing it was stolen." *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009). "Section 496(c) states that '[a]ny person who has been injured by a violation of subdivision (a) [receipt of stolen property] ... may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.'" *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 242 (9th Cir. 2021).[5]

---

[5] Plaintiffs do not seek punitive damages under *Cal. Civ. Code* § 3294. Rather, the treble damages (footnote continued)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Defendants obtained Plaintiffs' $1,000,000 through deliberate misrepresentations about Caravan's property ownership, licensing status, and financial stability. Defendants falsely claimed that Caravan had already acquired and developed a cannabis facility in Santa Cruz, secured substantial outside funding, and was appropriately licensed—when in truth, none of those representations were accurate. *Id.* at ¶ 49. Defendants never disclosed that Caravan Holdings Corporation did not own the Santa Cruz property, nor that Caravan was financially insolvent and already in default on other obligations. *Id.* at ¶ 50.

After securing the funds, Defendants knowingly used them for purposes inconsistent with their representations, including the covert purchase of the Santa Cruz property through Caravan Holdings LLC—a separate entity not disclosed to Plaintiffs. *Id.* at ¶ 63. Defendants concealed this diversion and continued to withhold the funds even after being notified of default. *Id.* at ¶ 44.

### 3.    The *Eitel* Factors Support Entry of Default Judgment

The seven *Eitel* factors strongly favor entering default judgment:

**Possibility of Prejudice to Plaintiffs:** *First*, Plaintiffs have expended significant time and resources pursuing relief against Defendants, who have repeatedly failed to respond to pleadings, comply with Court orders, or participate meaningfully in this litigation. *See eg.* **Dkt. 129** at 3 (noting Defendant "only responded to one of the twenty interrogatories and did not explain why he failed to respond to the remaining nineteen"); *Id.* at 9 (finding Defendant "made no attempts to recover [] emails and documents from Google" and "took no action whatsoever to download or otherwise preserve the Workspace's contents"); *Id.* at 14 (observing that "[t]he complete destruction of Caravan's corporate records… greatly impairs Plaintiffs' ability to prosecute this case at trial" and that Defendant's conduct appears "to constitute a deliberate effort to stonewall and prevent Plaintiffs from discovering relevant evidence."). Without a default judgment,

---

requested are statutory and mandatory under *California Penal Code* § 496(c).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Plaintiffs will be left without recourse for the more than $1,000,000 in damages they suffered due to Defendants' fraudulent conduct.

**Merits of Plaintiffs' Substantive Claims:** *Second*, Plaintiffs have asserted meritorious claims for fraud, securities fraud, conversion, and receiving stolen property, among other claims. Each claim is supported by detailed factual allegations, corroborated by documentary evidence and deposition testimony. Plaintiffs have alleged that Defendants knowingly misrepresented Caravan's financial condition, ownership of property, licensure status, and intended use of loaned funds in order to induce a $1,000,000 investment—funds that were later misappropriated and concealed. *Id.* at ¶¶ 15-36.

**Sufficiency of the Complaint:** *Third*, the FAC clearly and plausibly alleges each of the elements required to sustain Plaintiffs' claims for fraud, securities fraud, conversion, and receiving stolen property. The well-pleaded allegations are supported by documentary evidence and deposition testimony.

**The Sum of Money at Stake:** *Fourth*, Plaintiffs seek damages that are significant yet proportional to the harm caused. Plaintiffs seek recovery of $4,716,629.31, including approximately $1,000,000 in loaned funds plus interest, along with treble damages under *California Penal Code* § 496(c), emotional distress damages, attorneys' fees, and costs. These amounts reflect both the principal lost and the nature of the egregious conduct involved. Given that Defendants obtained these funds through fraud and misrepresentation, and have since refused to return them, the relief sought is reasonable and justified.

**Possibility of Dispute as to Material Facts:** *Fifth*, because Defendants have failed to file any responsive pleading, default has been entered, and all well-pleaded allegations in the FAC are deemed admitted. *See Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986) ("Well-pleaded allegations are taken as admitted on a default judgment"). Defendants' refusal to meaningfully participate in discovery—including spoliation of key evidence, refusal to respond to written discovery requests, and failure to appear for continued

deposition—further diminishes the likelihood of any good-faith dispute concerning material facts. The record establishes a clear and consistent pattern of fraudulent conduct and concealment by Defendants.

**Whether the Default Was Due to Excusable Neglect:** *Sixth*, the procedural history demonstrates that Defendant Hurt was fully aware of his obligations to respond to the FAC. He explicitly acknowledged the applicable deadline in a May 29, 2025 email. **Dkt. 154**. Despite that, he failed to file any response by the June 17, 2025 deadline, failed to participate in the parties' required pretrial filings, and ignored further communications from Plaintiffs' counsel. His repeated failures to respond—after multiple extensions and prior defaults—are not the result of excusable neglect, but of willful disregard for this Court's rules and deadlines.

**Strong Policy Favoring Decisions on the Merits:** *Seventh*, although courts prefer to decide cases on the merits, this preference is not absolute. Where, as here, Defendants have obstructed the litigation process, failed to preserve critical evidence, ignored multiple deadlines, and defaulted repeatedly, this policy cannot override the need for resolution. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible."). Entry of default judgment is the only appropriate path forward.

## B.    The Court should award Plaintiffs $4,716,629.31

Once a court has determined that there should be liability, "it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 920. By virtue of default, the complaint's well-pleaded factual allegations are taken as true, other than those concerning the amount of damages. *Id.* Under Rule 8(a)(3), a plaintiff must specifically demand relief and "prove up" the amount of damages sought. *Id.* at 923. Moreover, Rule 54(c) limits recovery in default judgment to "only the amount prayed for in the complaint." *Id.*

### 1.    Actual Damages

### a.  Principal

As set forth in the FAC, Plaintiffs Welter and Stuart each loaned substantial funds to Defendant Caravan Holdings Corporation pursuant to a series of Convertible Promissory Notes. Mr. Welter loaned Caravan a total of $500,000 through four separate notes (**Dkt. 100** at ¶¶ 15–20), while Mr. Stuart loaned an additional $500,000 through two notes. *Id.* at ¶¶ 24-27. Although Mr. Welter attempted to convert one of the $100,000 loans into equity and $50,000 cash, he was neither given any stock nor paid the $50,000. *Id.* at ¶¶ 21-22. As a result, this act was essentially null and void, without any force or effect. Accordingly, the total principal amount outstanding under the Promissory Notes at the time of Plaintiffs' demand for repayment and acceleration of the debt was $1,000,000. *Id.* at ¶ 47.[6]

### b.  Interest

The Promissory Notes at issue expressly provide that interest shall accrue at a rate of 14% per annum. *Id.* at ¶ 36.[7] Under California law, where parties have contractually agreed to an interest rate, that rate is enforceable unless it is shown to be usurious. *See Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798–99 (1994). The Notes all provide for the application of California law. *See* **Stuart Decl.** Exs. A & B, **Welter Decl.** Exs. A-D.

Under Article XV, Section 1 of the California Constitution, the general interest rate for any loan or forbearance of money is capped at 7% per annum, unless the parties contract in writing for a higher rate. For loans "primarily for personal, family or household purposes," the Constitution permits a maximum rate of 10% per annum (Art. XV, § 1, ¶ 1). For loans "for any use other than" personal, family, or household purposes—such as commercial or business loans—the maximum permissible rate is the higher of 10% or 5% plus the Federal Reserve Bank of San Francisco's discount

---

[6] Although the FAC included a second cause of action for breach of the Conversion Agreement seeking $50,000 (**Dkt. 100** at ¶80), Plaintiffs are no longer pursuing this amount in light of the withdrawal of that claim in the Memoranda of Contentions of Fact and Law. **Dkt. 141.**

[7] While the notes have two-year maturities, prejudgment interest on a sum certain run from the date the claim vests until judgment. *Cal. Civ. Code* § 3287(a).

rate (Art. XV, § 1, ¶ 2). However, the Constitution also expressly authorizes the Legislature to create exceptions to these usury limits: "The rate specified above is the maximum rate except when higher rates are authorized by law" (Art. XV, § 1, ¶ 4).

Here, the Promissory Notes do not fall within the 10% cap for consumer loans under Section 1(1) because the funds were not extended for personal, family, or household purposes. Rather, the funds were directed toward a commercial venture, placing them within the scope of Section 1(2). Thus, the applicable ceiling is either 10% or 5% plus the Federal Reserve discount rate—unless a valid statutory exemption applies.[8]

"The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Id.* However, "[o]ur Supreme Court has noted that 'the usury law is complex and is riddled with so many exceptions that the law's application itself seems to be the exception rather than the rule.'" *Bisno v. Kahn*, 225 Cal. App. 4th 1087, 1097 (2014). "A transaction is rebuttably presumed *not* to be usurious." *Id.* (emphasis in original).

Here, elements one and three are met: the Promissory Notes are loans and are absolutely repayable by the borrower. As to the second element, the $300,000 Note issued to Plaintiff Stuart qualifies for a statutory exemption under *California Corporations Code* § 25118(b)(1), which excludes from qualification requirements—and, by extension, from constitutional usury limits—"any offer or sale of any evidence of indebtedness… where the evidences of indebtedness aggregate at the time of issuance at least three hundred thousand dollars ($300,000) in original face amount." Because Stuart's note meets this threshold on its own at the time of issuance, it falls squarely

---

[8] As of December 19, 2024, the Federal Reserve Bank of San Francisco's primary discount rate was 4.5%. Under Article XV, § 1(2) of the California Constitution, the usury ceiling for a commercial loan is the greater of (a) 10% flat, or (b) 5% plus the Federal Reserve discount rate. Adding 5% to 4.5% gives 9.5%. Because 10% is higher than 9.5%, the maximum permissible rate is 10%.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

within this exemption and is therefore not subject to the usury ceiling at all. While the remaining Notes may technically exceed the rate permitted under Article XV, § 1(2), the fourth element—willful intent—is not satisfied.

The intent element under California usury law is construed narrowly. As the California Supreme Court explained in *Ghirardo,* intent to violate the law is not required; rather, "[t]he conscious and voluntary taking of more than the legal rate of interest constitutes usury," and "the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete." 8 Cal. 4th at 798. However, this strict rule admits one critical qualification. "The fact that the parties to the loan did not recognize it as being unlawful [usurious] when it was entered into does not prevent it from being so, ***unless fraudulent representations were made concerning the transaction***." *Martin v. Ajax Constr. Co.*, 124 Cal. App. 2d 425, 432 (1954) (emphasis added).

That exception is dispositive here. Plaintiffs have alleged, in no uncertain terms, that they would not have entered into any of the Promissory Notes but for Defendants' fraudulent misrepresentations. Defendant Hurt falsely claimed that Caravan owned real property in Santa Cruz, despite having no enforceable interest in the property. **Dkt. 100** at ¶ 50. Plaintiffs relied on these misstatements, among others, when agreeing to the Notes, and suffered significant losses when the truth later emerged.

This pervasive fraud entirely undermines any suggestion that Plaintiffs acted with the "willful intent" required to support a finding of usury. *Stock v. Meek*, 35 Cal. 2d 809, 817 (1950) ("If no loophole is provided for lenders, and all borrowers ***save fraudulent ones*** are protected, usurious transactions will be discouraged") (emphasis added). Here, there was no conscious effort to skirt usury laws—only good faith reliance on material misrepresentations. That negates the fourth element and defeats any usury defense.

However, while Plaintiffs maintain that a 14% rate is supportable in light of Defendants' fraud, in order to remove any issue relating to usury laws, the $300,000 loan to Plaintiff Stuart may be calculated separately at 14% per annum beginning on

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

December 15, 2021, while the remaining $650,000 accrues interest at 10% per annum from August 1, 2020—resulting in a combined total of approximately $469,589.81. To calculate this, the $300,000 principal accrues interest at a rate of $115.07 per day for 1,294 days (from December 15, 2021, to July 1, 2025), totaling $148,900.58. The $650,000 principal accrues interest at a rate of $178.08 per day for 1,795 days (from August 1, 2020, to July 1, 2025), totaling $319,657.53. The combined total of these two amounts is $468,558.11.

Defendants made partial interest payments to Plaintiffs during the first two years of the lending relationship, totaling $159,833.59—with $130,667.60 paid to Plaintiff Welter between August 2020 and June 2022, and $29,165.99 paid to Plaintiff Stuart between January and June 2022. After applying these payments to the total accrued interest of $468,558.11,[9] the net outstanding interest balance due under the Promissory Notes is $308,724.52.

### 2. Treble Damages Under California Penal Code § 496(c)

Plaintiffs seek treble damages pursuant to *California Penal Code* § 496(c), which authorizes civil recovery where a person "buys or receives any property that has been obtained in any manner constituting theft," including obtaining money by false pretenses. *See Cal. Penal Code* § 484. Courts have applied § 496(c) to award treble damages where funds were procured through fraudulent inducement and never repaid. *See Bell v. Feibush*, 212 Cal. App. 4th at 1048 (2013) (affirming award of treble damages where defendant fraudulently induced a loan and failed to repay it); *see also Grouse River Outfitters*, 848 F. App'x at 242 ("[a]ny person who has been injured by a violation of subdivision (a) [receipt of stolen property]... may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees").

---

[9] While portions of the principal were extended in separate tranches over time (e.g., Stuart's second loan of $200,000 was not made until February 21, 2022), these figures are used for consistency and to reflect the overall payment pattern. **In light of Defendants' fraudulent inducement and failure to maintain accurate records, strict apportionment by loan date is not practicable and is not required.**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Here, Defendants fraudulently induced Plaintiffs to loan $1,000,000 through misrepresentations about Caravan Holdings Corporation's financial condition and assets. Plaintiffs relied on those misstatements and suffered substantial economic loss when Defendants failed to repay the loans and diverted funds to an undisclosed entity for personal gain.

As of July 1, 2025, Plaintiffs have suffered actual monetary damages totaling $1,308,724.52—consisting of $1,000,000 in unpaid principal and $308,724.52 in net interest. Plaintiffs are therefore entitled to treble damages in the amount of $3,926,173.56, in addition to separately recoverable attorneys' fees, litigation costs, and emotional distress damages.

### 3.    Emotional Distress

In addition to substantial financial losses, Plaintiffs are entitled to recover "general damages" for emotional distress. *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 417 (1981). Plaintiffs have endured severe emotional distress as a direct result of Defendant Hurt's fraudulent conduct. As detailed in Plaintiffs' sworn declarations, this emotional harm manifested across multiple areas of their lives—professional, personal, and psychological.

Rob Stuart entered into the $500,000 loan agreement with Hurt in good faith, with the expectation that repayment would be forthcoming (**Stuart Decl.** ¶ 2). When the promised repayment never came, Stuart was understandably shocked and dismayed that he had **lost half a million dollars** (**Stuart Decl.** ¶ 7). Stuart was forced to delay a business venture, stretch limited resources, and ultimately use funds from his personal retirement savings to move forward with his life (**Stuart Decl.** ¶ 11).

These cumulative pressures extended into Stuart's personal life. After realizing in May 2022 that he had been hoodwinked by Hurt, he experienced shock and psychological devastation, with nights lying awake and persistent stress, anxiety, low mood, and difficulty focusing (**Stuart Decl.** ¶ 8). The toll has undermined his confidence at work and diverted time and energy into litigation (**Stuart Decl.** ¶ 13). At home, the strain has

19

affected his relationship; his husband now hesitates when he proposes new business ventures, reflecting the ongoing impact of Hurt's conduct (**Stuart Decl. ¶** 10).

Thomas Welter likewise suffered significant emotional harm from Hurt's fraud. He describes shock and a deep sense of betrayal when it became clear the loans would not be repaid, accompanied by persistent insomnia, heightened stress and anxiety, intrusive rumination, and difficulty concentrating (**Welter Decl. ¶** 12). He further reports diminished confidence in decision-making affecting both his professional and personal life, along with fatigue and ongoing anxiety—the physical and psychological manifestations of prolonged stress (**Welter Decl. ¶** 10). Despite his training as a therapist, he found himself experiencing the very symptoms he typically helps patients manage, and the burden of the betrayal remains (**Welter Decl. ¶** 13-14).

Given the detailed nature of Stuart and Welter's testimony, the protracted duration of the harm, and the egregiousness of the Defendants' misconduct, Plaintiffs respectfully request that the Court award $500,000 in emotional distress damages —$250,000 per person. This figure is supported by the record and proportionate to the magnitude of the injury suffered. *See S&G Labs Haw., Ltd. Liab. Co. v. Graves*, 712 F. Supp. 3d 1364, 1373-74 (D. Haw. 2024) (granting $250,000 in general damages for emotional distress stemming from wrongful termination, based on the plaintiff's testimony regarding depression and anxiety, and observing that "federal law permit[s] a jury to award emotional distress damages based solely on the plaintiff's testimony"); *see also Exxon Valdez v. Exxon Mobile Corp. (In re Exxon Valdez)*, 490 F.3d 1066, 1085 (9th Cir. 2007) ("In this case the district court found that Exxon's conduct caused… more than mere economic harm to them, because the economic effects of its misconduct produced severe emotional harm as well… The Supreme Court has recognized conduct causing emotional as well as economic harm can be more reprehensible than conduct causing mere economic harm.")

### 4.   Attorneys' Fees and Costs

Plaintiffs seek an award of $269,039 in attorneys' fees and $21,416.75 in litigation

costs, for a total of $290,455.75. **Lowe Decl.** ¶ 5. These amounts are supported by detailed billing records reflecting the hours worked and hourly rates charged by counsel. While Plaintiffs are not relying on breach of contract for purposes of default judgment, they are still entitled to attorneys' fees on two independent bases.

First, Plaintiffs seek relief under *California Penal Code* § 496(c), which explicitly provides for recovery of attorneys' fees and treble damages where, as here, Defendants obtained money through false pretenses and retained it unlawfully ("Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, ***costs of suit, and reasonable attorney's fees***") (emphasis added).

Second, the fraudulent conduct giving rise to this action is inextricably intertwined with the Promissory Notes executed by Defendants, each of which contains a broad fee-shifting provision. **Stuart Decl.** Exs. A & B, **Welter Decl.** Exs. A-D. Specifically, each of the Promissory Notes at issue expressly provides that Caravan Holdings Corporation's "Obligations" include not only the principal and interest due, but also "all interest, fees, charges, expenses, attorneys' fees and costs and accountants' fees and costs chargeable to and payable by the Company [Caravan Holdings Corporation] hereunder." *Id.* The Notes further provide that upon the occurrence of an Event of Default, all such unpaid Obligations—including attorneys' fees and costs—are immediately due and payable. *Id.*[10]

Although Plaintiffs do not seek default judgment based on their breach of contract claims, courts routinely award attorneys' fees under a contract where tort claims arise from or are closely related to that contract. *See Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998). That principle applies here. The loans, the misrepresentations inducing them, and the damages arising from nonperformance are all bound up in the same set of operative facts and agreements. Accordingly, whether under *Penal Code* § 496(c), the terms of the

---

[10] In the present case, the FAC alleges that Hurt is the alter ego of Caravan Holdings Corporation. **Dkt. 100** ¶ 11.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Promissory Notes, or both, Plaintiffs respectfully request a full award of $290,455.75 in attorneys' fees and litigation costs.

While *Local Rule* 55-3 provides a default schedule for attorneys' fees in routine default cases—capping fees at 25% of the first $10,000 recovered, 10% of the next $90,000, and smaller percentages thereafter—it does not apply where, as here, the plaintiff seeks a greater amount than permitted under that schedule and supports the request with detailed billing records and other documentation. "If a party seeks a fee 'in excess of' the schedule and timely files a written request to have the fee fixed by the court, then the court must hear the request and award a 'reasonable' fee." *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1159–60 (9th Cir. 2018). This case involved over two years of litigation, complex claims including fraud and alter ego liability, and substantial legal work that far exceeds the scope of a typical default.

Under the "lodestar method," courts award fees based on the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id.* at 1158. Plaintiffs' fee request reflects that standard and is well-supported. Each and every fee and cost are documented in Exhibit A to the Declaration of Steven T. Lowe, Esq. in Support of the Motion for Default Judgment, which provides detailed billing records identifying the date of service, amount of time spent, hourly rate charged, and the total billed. **Lowe Decl. ¶ 4.**[11] Accordingly, Plaintiffs respectfully request a total award of $290,455.75 in attorneys' fees and costs.

### 5.    Joint and Several Liability Based on Alter Ego Doctrine

Defendants Michael Hurt, Caravan Holdings Corporation, and Caravan Holdings LLC should be held jointly and severally liable for all damages awarded in this action. California courts recognize that "[t]he alter ego doctrine prevents individuals or other

---

[11] Descriptions of the work performed have been redacted to protect attorney-client privilege and maintain confidentiality. **Lowe Decl. ¶ 4.** Nonetheless, should the Court find it necessary to evaluate the reasonableness of the requested fees, Plaintiffs are willing to submit unredacted billing records for *in camera* review. *Id.*

corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000).

To establish alter ego liability, Plaintiffs must show: (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;" and, (2) "adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice." *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977). Factors suggesting an alter ego relationship include "[c]ommingling of funds and other assets [and] failure to segregate funds of the separate entities... ; the treatment by an individual of the assets of the corporation as his own...; the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization,... the disregard of legal formalities and the failure to maintain arm's length relationships among related entities...; [and] the diversion [of assets from a corporation by or to a] stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets... between entities so as to concentrate the assets in one and the liabilities in another." *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 838 (1962) (citations omitted).

Defendant Hurt is personally liable under an alter ego theory. At all relevant times, Hurt exercised such pervasive domination and control over Caravan Holdings Corporation and Caravan Holdings LLC that the distinction between the corporations and himself ceased to exist. He served as Caravan's CEO and owned 91.25% of its outstanding shares during the relevant period. **Dkt. 129** at 10. Although Hurt claims to have sold his shares, he has failed to provide any details about the transaction—including the purchaser, the date of sale, or the price—raising serious doubts about the legitimacy of that claim. *Id.* Hurt also routinely commingled corporate and personal funds, failed to observe corporate formalities, and treated corporate assets as his own. *Id.* Caravan Holdings was severely undercapitalized, maintained inadequate business records, and operated in a manner designed to shield Hurt from personal liability while allowing him

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

to personally benefit. *Id.*; **Dkt. 100** at ¶ 13.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court enter judgment holding Michael Hurt, Caravan Holdings Corporation, and Caravan Holdings LLC jointly and severally liable for all damages awarded in this case—including $3,926,173.56 in treble damages under *Penal Code* § 496(c) (based on $1,308,724.52 in actual damages), $500,000 in emotional distress damages, and $290,455.75 in attorneys' fees and litigation costs—for a total judgment of $4,716,629.31.

Dated: September 2, 2025                         **LOWE & ASSOCIATES, P.C.**

                                      By:  _____
                                           Steven T. Lowe, Esq.
                                           Attorney for Plaintiffs Thomas Welter
                                           and Rob Stuart

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

1     **<u>PROOF OF SERVICE</u>**

2     UNITED STATES DISTRICT COURT

3     CENTRAL DISTRICT OF CALIFORNIA

4          I am a resident of the United States and employed in the County of Los Angeles, State of
      California, over the age of 18 and not a party to the within action or proceedings; my business
5     address is 8383 Wilshire Blvd, Suite 1038, Beverly Hills, California 90211.

6          On September 2, 2025 I served the foregoing document(s) described as:

7     **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT
      AGAINST MICHAEL HURT, CARAVAN HOLDINGS CORPORATION d/b/a OASIS
8     CANNABIS COMPANY, AND CARAVAN HOLDINGS, LLC**

9     on the interested parties and/or through their attorneys of record by depositing the original or true
      copy thereof as designated below, at Los Angeles, California, addressed to the following as
10    follows:

11
                Michael Hurt, **an individual**                          Michael Hurt
12    **Caravan Holdings Corporation D/B/A Oasis**        **Caravan Holdings, LLC, a Wyoming**
      **Cannabis Company, a Nevada corporation**          **Limited Liability Company**
13            10990 Wilshire Blvd, Suite 1025                       1950 S Santa Fe Ave, 109
                Los Angeles, CA 90024                               Los Angeles, CA 90021
14             michael@oasiscannabis.co                            michael@oasiscannabis.co
               michaelhvrt@gmail.com                               michaelhvrt@gmail.com
15                    *in Pro Per*                                       *in Pro Per*

16
      **( X )**    **BY E-MAIL OR ELECTRONIC TRANSMISSION** (pursuant to Local Rule 5-3.1.2)**:** I
17            caused said document(s) to be sent from e-mail address kevin@lowelaw.com to the
              persons at the e-mail addresses listed in the Service List. I did not receive, within a
18            reasonable time after the transmission, any electronic message or other indication that the
              transmission was unsuccessful.
19

20    **( X )**    FEDERAL**:** I am employed in the office of an attorney who is a member of this court at
              whose direction I served the above-described document.
21
22    ( X )    (State) I declare under penalty of perjury under the laws of the State of California that the
               above is true and correct.

23    Executed September 2, 2025 at Los Angeles, California.

24
      */s/ Kevin Erazo*
25    _____
      Kevin Erazo
26

27

28